**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico**

Civil Action No. 1:24-cv-02513-DDD-STV

LA BIELA, LLC, a Colorado limited liability company

    Plaintiff,

v.

JOHN CALLAHAN, an individual;
CDC REAL ESTATE CORPORATION, a Delaware corporation; and
ALAMITO, LLC, a Texas limited liability company,

    Defendants.

---

## ORDER GRANTING MOTION TO DISMISS

---

Plaintiff alleges Defendants stole upwards of a million dollars through self-dealing transactions as its corporate managers. It brings seven common-law claims, including civil theft, breach of fiduciary duty, conversion, and unjust enrichment. *See* Dkt. 19 at 7–12. Defendants have moved to dismiss under Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6). Dkt. 21. Because this court lacks personal jurisdiction over Defendants, the motion is granted.

### BACKGROUND

Plaintiff La Biela, LLC is a single-member limited liability company founded by Jeff Oberg in Colorado in 2001. Dkt. 28-1 at 1. That year, it claims it was approached by Defendant John Callahan, the principal of Defendants CDC Real Estate Corporation and Alamito, LLC, about pursuing real estate developments in the Denver-metro area. *Id.* at 2. Mr. Callahan and CDC were appointed managers of La Biela in December 2001 and soon after began investing the company's assets in various

- 1 -

projects. *Id*. Though the timing is unclear from the amended complaint, La Biela claims that over the next twenty years, Mr. Callahan and CDC "systematically depleted La Biela's investments and cash by, among other things, siphoning cash through unapproved exorbitant management fees and [] below-market-rate loans to [Mr. Callahan] and [] friends." Dkt. 19 at 4. This included loans of $10,886, $38,620, and $28,305 to Mr. Callahan, a loan of $3,000 to Mr. Callahan's son, a loan of $45,000 to Trinity Tree Farms, a business owned by Mr. Callahan that went bankrupt, a loan of $50,000 to Mr. Callahan's attorney, and a loan of $370,631 to Alamito. *Id*. at 4–5. La Biela claims other undocumented loans were made, but these were concealed or obscured by Mr. Callahan, along with the financial statements and tax returns of La Biela. *Id*. at 5. When La Biela discovered Mr. Callahan made a loan to Alamito in December 2023 without documentation, Mr. Oberg removed Mr. Callahan and CDC as managers. *Id*. After this, La Biela alleges Mr. Oberg discovered Mr. Callahan embezzled an additional $570,000 in late 2023 through three wire transfers of $400,000, $100,000, and $70,000. *Id*. at 6. To cover up this theft, La Biela alleges Mr. Callahan created a backdated Sale and Assignment Agreement that sold Alamito's interest in Wadsworth & Girton, LLC, a company with real property assets in Colorado, to La Biela. *Id*. at 7. In response, La Biela filed the current lawsuit (Dkt. 19), which seeks the return of the alleged stolen funds, an accounting of Mr. Callahan's and CDC's actions as managers of La Biela, and damages.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) provides that a defendant may move to dismiss a complaint for "lack of jurisdiction over the person." A plaintiff bears the burden of establishing personal jurisdiction over a defendant. *OMI Holdings, Inc. v. Royal Ins. Co.,* 149 F.3d 1086,

1091 (10th Cir. 1998). Where, as here, there has been no evidentiary hearing, and the motion to dismiss for lack of personal jurisdiction is decided on the basis of affidavits and other written materials, a plaintiff need only make a *prima facie* showing that jurisdiction exists. *Id.*

A plaintiff "has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading." *Pytlik v. Prof'l Res., Ltd.,* 887 F.2d 1371, 1376 (10th Cir. 1989). The allegations in a complaint "'must be taken as true to the extent they are uncontroverted by [a defendant's] affidavits.'" *Wenz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir. 1995) (quoting *Doe v. Nat'l Med. Servs.,* 974 F.2d 143, 145 (10th Cir. 1992)). If the parties present conflicting affidavits, all factual disputes must be resolved in a plaintiff's favor, and a "plaintiff's *prima facie* showing is sufficient notwithstanding the contrary presentation by the moving party." *Id.* (citation omitted). Only well-pled facts, as opposed to mere conclusory allegations, must be accepted as true. *Id.*

To determine whether a federal court has personal jurisdiction over a nonresident defendant in a diversity action, the court looks to the law of the forum state. *Taylor v. Phelan,* 912 F.2d 429, 431 (10th Cir. 1990). In Colorado, the assertion of personal jurisdiction must both: (1) satisfy the requirements of the long-arm statute; and (2) comport with due process. *Id.*; *Doering v. Copper Mountain, Inc.,* 259 F.3d 1202, 1209 (10th Cir. 2001); *Classic Auto Sales, Inc. v. Schocket,* 832 P.2d 233, 235 (Colo. 1992). Colorado's long-arm statute subjects a defendant to personal jurisdiction for engaging in—either in person or by an agent—the "commission of a tortious act within this state," or the "transaction of any business within this state." C.R.S. §§ 13-1-124(1)(a)–(b). To comport with due process, a defendant must have minimum contacts with the forum state such that maintenance of the lawsuit would not offend

- 3 -

"traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316 (1945). Colorado's long-arm statute is a codification of the "minimum contacts" principle required by due process. *See Lichina v. Futura, Inc.,* 260 F.Supp. 252, 255 (D. Colo. 1966). Accordingly, under Colorado law, a court may assert jurisdiction to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment. *See OMI Holdings,* 149 F.3d at 1090; *Scheur v. Dist. Ct.,* 684 P.2d 249 (Colo. 1984). The "minimum contacts" standard may be satisfied in either of two ways—general or specific jurisdiction. *Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 455 (10th Cir. 1996). "General personal jurisdiction means a court may exercise jurisdiction over an out-of-state party for any purpose." *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1229 n.2 (10th Cir. 2020). By contrast, specific personal jurisdiction allows a court to "exercise jurisdiction over an out-of-state party only if the cause of action relates to the party's contacts with the forum state." *Id*.

## DISCUSSION

Defendants assert that they are not subject to this court's jurisdiction because exercising personal jurisdiction over them would offend due process and is not reasonable given their minimal contacts with Colorado. Dkt. 21 at 8, 11–13. La Biela contends this court has either general or specific jurisdiction over Defendants based on their business contacts with Colorado and the harmful effects of their alleged tortious actions. Dkt. 28 at 7–11. I agree with Defendants.

## I.    General Jurisdiction

The Defendants here are an individual, a corporation, and an unincorporated entity. The basic proposition is that courts only have general jurisdiction over foreign defendants when the defendant's contacts "with the State are so 'continuous and systematic' as to render [it] essentially

- 4 -

at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 134–39 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). As to corporations, the law is clear that typically this applies only in the corporation's formal place of incorporation or its principal place of business. *Id.* at 126–27. Neither of those is applicable to CDC, a Delaware corporation doing business principally in Texas.

The law may not be quite as clear as to individuals and unincorporated entities, but not in a way that helps Plaintiff's general jurisdiction argument. Again, the question is whether the defendants are "essentially at home" in Colorado, and the Supreme Court has noted that "for an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Id.* at 137 (quoting *Goodyear*, 564 U.S. at 924); *see also Hood v. American Auto Care, LLC*, 21 F. 4th 1216, 1221 (10th Cir. 2021) (a state has "general jurisdiction over any claims against defendants who are 'essentially at home' there, as when an individual is domiciled in the State or a corporation is incorporated or has its principal place of business there") (cleaned up).

As to individuals, there is some debate as to whether the state of domicile is the *only* place where general jurisdiction may obtain. *See generally* Jeffrey L. Rensberger, *There's No Place Like Essentially at Home: General Jurisdiction Over Individuals Apart From Domicile and Presence*, 77 Ark. L. Rev. (2025). And as to unincorporated LLCs, there's some confusion about how the rules applying to diversity jurisdiction interact with the rules for personal jurisdiction. *See Hannah v. Johnson & Johnson, Inc.*, No. 18-1422 (FLW), 2020 WL 3497010, at *16 (D.N.J. June 29, 2020) ("Whereas a limited liability company's citizenship for the purposes of determining diversity jurisdiction is ascertained by tracing the citizenship of its members, for the purposes of general personal

jurisdiction, a limited liability company's citizenship is that of its principal place of business and state of incorporation." (internal citations omitted)).

La Biela argues that Defendants' contacts with Colorado are so "continuous and systematic" that they are essentially "at home" here. *See* Dkt. 28 at 7–8. As support, it points to allegations in the amended complaint that Mr. Callahan, through CDC, advertised his services to and managed the assets of La Biela, a Colorado LLC, for twenty years (Dkt. 19 at ¶¶ 7–8); CDC maintained offices in Denver (*Id.* at ¶ 7); Mr. Callahan traveled to Colorado on numerous occasions to conduct business on behalf of CDC and Alamito (*Id.* at ¶¶ 12–15); and Mr. Callahan developed significant real estate holdings in Colorado through CDC and Alamito, including a Rite-Aid, Circuit City, and Builders Square (*Id.* at ¶¶ 7, 11, 28, 33, 38; Dkt. 28-2 at 2). Some of these allegations are wholly conclusory and, without additional support, cannot be countenanced, while others plainly misapprehend the level of contacts needed to support general jurisdiction. *See Schneider v. Cate,* 405 F.Supp.2d 1254, 1260 (D. Colo. 2005) ("The threshold of contacts necessary to support general jurisdiction is high.") (citation omitted); *see also Benton v. Cameco Corp.,* 375 F.3d 1070, 1080 (10th Cir. 2004) ("Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test." (quoting *OMI Holdings,* 149 F.3d at 1091)).

La Biela does not deny or rebut the numerous representations of Defendants that belie its claim of general jurisdiction. These include (1) Mr. Callahan is a citizen of and domiciled in Texas (Dkt. 21 at 8); (2) Mr. Callhan is the sole member of CDC, which is incorporated in Delaware and has its principal place of business in Texas (*Id.*); (3) CDC has never been managed from Colorado, owned Colorado-based real estate or

assets, or been registered or otherwise conducted business in Colorado (*Id.*); (4) Alamito is incorporated and has its principal place of business in Texas, where Mr. Callahan manages it as its sole member (*Id.*); (5) Defendants have never maintained offices, employees, or agents in Denver or anywhere else in Colorado (*Id.*); and (6) Mr. Callahan's alleged "several real estate projects in Colorado," *see* Dkt. 19 at ¶ 11, which were undertaken as a member of two LLCs in the 1990s, have since been discontinued, and are unrelated to CDC and Alamito. Dkt. 21 at 16; Dkt. 21-7 at 4–5. La Biela also never alleges that Defendants advertised their services to anyone in Colorado other than itself, never utilized a local agent on their behalf, and never owned a bank account or conducted any part of their management duties in Colorado. *See Kuenzle*, 102 F.3d at 457 (noting that the presence of local agents, advertisements, bank accounts, and the volume of a defendant's businesses are factors for determining general jurisdiction). Altogether, La Biela's argument for general jurisdiction over Defendants relies on a string of generalized and conclusory statements that allege, at most, a loose and dated affiliation with Colorado. Given this, Defendants do not have the requisite ties to Colorado for this Court to exercise general jurisdiction over them.

## II.    Specific Jurisdiction

To subject a nonresident to the specific jurisdiction of the forum state, due process is only satisfied if the litigation results from alleged injuries that "arise out of or relate to" activities that are significant and purposefully directed by the defendant at residents of the forum. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Encore Prods., Inc. v. Promise Keepers*, 53 F.Supp.2d 1101, 1116 (D. Colo. 1999). Purposeful direction may be established "when an out-of-state defendant's intentional conduct targets and has substantial harmful effects in the forum state." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d

895, 907 (10th Cir. 2017). A defendant's conduct toward the forum state cannot be "random," "fortuitous," or "attenuated," *F.D.I.C. v. First Interstate Bank of Denver N.A.,* 937 F.Supp. 1461, 1468 (D. Colo. 1996), nor is a "defendant's relationship with a plaintiff or third party, standing alone, a sufficient basis for jurisdiction." *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (cleaned up). Instead, specific jurisdiction is only proper when a defendant's "intentional action is expressly aimed at the forum state with knowledge that the brunt of the injury would be felt there." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1072 (10th Cir. 2008) (cleaned up). This requires that there be an "affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum state." *Bristol–Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1781 (2017) (quoting *Goodyear*, 564 U.S. at 919). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the [s]tate." *Id.*

La Biela argues specific jurisdiction exists here because Defendants' actions, taken in the aggregate, were purposefully directed toward Colorado, the brunt of their conduct was felt here, and the injury to La Biela arises out of Defendants' forum-related activities. Dkt. 28 at 8–10; Dkt. 19 at 7–9. In Colorado, minimum contacts based on alleged tortious conduct are satisfied when: "(1) tortious conduct occurs in Colorado; or (2) tortious conduct initiated in another state causes injury in Colorado." *Nat'l Union Fire Ins. Co. v. Kozeny,* 115 F.Supp.2d 1231, 1236 (D. Colo. 2000); C.R.S. § 13–1–124(1)(a). "Not all alleged 'injuries' that result from tortious conduct in a foreign state will trigger long-arm jurisdiction." *Wenz,* 55 F.3d at 1507–08. The injury itself must be felt in Colorado, and must be "direct, not consequential or remote." *Id* at 1508. Further, "when both the tortious conduct and the injury occur in another state,

the fact that Plaintiff resides in Colorado and experiences some economic consequences here is insufficient to confer jurisdiction on a Colorado court." *Id.* (quoting *Amax Potash Corp. v. Trans–Res., Inc.,* 817 P.2d 598, 600 (Colo. Ct. App. 1991)).

Here, the alleged tortious conduct on the part of Defendants occurred outside of Colorado. The funds involved in the alleged fraudulent loans to Mr. Callahan, his son, and other business were withdrawn from a Texas bank account and went to recipients outside of Colorado. Dkt. 21 at 9. And the alleged fraudulent Sale and Assignment Agreement between Alamito and La Biela was executed in Texas. *Id.* Based on the allegations in La Biela's amended complaint and response, there is nothing to suggest Defendants' actions were directed specifically towards Colorado. Although the tortious conduct attributed to Defendants bears an attenuated connection to Colorado, the pleadings do not show "that Colorado was the focal point of the defendants' torts." *See Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 97 (10th Cir. 2012) (finding no purposeful direction under the harmful effects framework, where plaintiffs "lodge[d] broad assertions that the defendant's conduct was 'related' to Colorado," but failed to explain how the conduct was "expressly and directly aimed toward Colorado"); *see also Wyles v. Brady*, 833 F. App'x 690, 695 (10th Cir. 2020 ("Wyles has not demonstrated that the only act arguably intended to cause harm in Colorado was directed at the forum state (as opposed to merely at the plaintiff in the forum state)[.]"). The mere fact that La Biela's residence is Colorado, and thus, its damages were felt in Colorado, is insufficient to establish specific jurisdiction. *See Anzures v. Flagship Rest. Grp.*, 819 F.3d 1277, 1282 (10th Cir. 2016) ("*Walden* reinforces that personal jurisdiction may not rest solely on the fact that a defendant's conduct affected the plaintiff in the forum state."); *see also Dental Dynamics*, 946 F.3d at 1232 (finding no purposeful direction where the alleged harm "never passed through [the forum

state] and the only effects felt in [the forum state] arose from the incidental factor that" the plaintiff "was located there."). Because La Biela has failed to meet its prima facie burden that this court has personal jurisdiction over Defendants, the case must be dismissed.

## CONCLUSION

It is ORDERED that:

Defendants' Motion to Dismiss, **Dkt. 21**, is **GRANTED**.

DATED: July 16, 2025             BY THE COURT:

~~Daniel D.~~ Domenico
United States District Judge